## WATSON v. BONDURANT.

1. By the law of Louisiana, as held by her courts, it is indispensably necessary, in order to make a valid sale of land under a foreclosure of a mortgage, that in all parishes, except Jefferson and Orleans, there should be an actual seizure of the land; not perhaps an actual turning out of the party in possession, but some taking possession of it by the sheriff more than a taking possession constructively.

2. Under the arrangement, known in Louisiana as the "pact de non alienando," the mortgagee can proceed to enforce his mortgage directly against the mortgagor, without reference to the vendee of the latter. But the vendee has sufficient interest in the matter to sue to annul the sale, if the forms of law have not been complied with by the mortgagee of his vendor in making the sale.

3. Where a return in a record, purporting to be a sheriff's return to a *fieri facias*, alleges that under a proceeding to foreclose a mortgage the sheriff seized the mortgaged premises, but does not purport to be signed by the sheriff, the return is traversable, and if the law requires an actual seizure, it may be shown that none was made.

ERROR to the Circuit Court for the District of Louisiana.

Walter Bondurant brought this action against one Watson, in the court below, to recover possession of a lot of land containing one hundred and sixty acres, in the parish of Tensas, Louisiana.

The case was thus:

Daniel Bondurant, owning a large plantation in the said parish of Tensas, died intestate, leaving three sons, Horace, Albert, and John, and also a grandson, the plaintiff, then an infant, and coheir with them. In 1852 the sons sued for a partition, and a decree of sale was ordered. A sale was made,

and the sons bid off the plantation for $150,000, of which sum the plaintiff was entitled, as one heir of his grandfather, to a fourth, or $37,500. The sheriff, on the 4th day of December, 1852, executed to the sons a deed, reserving a special mortgage on the lands as security for the payment to the plaintiff of his share of the purchase-money when he should come of age, which would be in March, 1862. In the act of sale, which was executed by the sheriff and the purchasers, the latter bound themselves not to alienate, deteriorate, or incumber the property to the prejudice of the mortgage, which covenant is called, in Louisiana law, the "pact *de non alienando,*" and dispenses with the necessity of making any persons other than the mortgagors parties to a judicial proceeding upon the mortgage. This mortgage was duly recorded on the 6th of December, 1852. Regularly, it should have been reinscribed within ten years from that time. But it was not reinscribed until September, 1865; the plaintiff alleging, by way of excuse, the existence of the civil war, and that he was prevented by "*vis major,*" from reinscribing it.

Meantime, the sons divided the plantation between themselves, and the tract in question was set off to John Bondurant, who, in 1854, conveyed it to Watson, the defendant, who had been in possession thereof ever since.

On the 30th of January, 1866, the plaintiff commenced an action against his uncles in the District Court, parish of Tensas, for the recovery of $37,500, the amount of his mortgage, and obtained a judgment against them, under which the sheriff sold all the property mortgaged, including the tract for which the present suit was brought. Under this sale the plaintiff now claimed the land in controversy. The judgment was rendered November 14th, 1867. A *fieri facias* was issued, directed to the sheriff of the parish. This writ was produced in evidence, and had attached thereto a statement, unsigned, purporting to be a return, as follows:

"Received the 9th December, 1867, and served this writ as follows, to wit: I seized, on the 25th day of December, A.D. 1867, the following described property belonging to defendants,

to wit (describing the entire plantation). On the 28th day of December, 1867, I advertised said property for sale at the court-house door, in this parish, on Saturday, the 1st of February, A.D. 1868, for cash, &c. I offered said property for sale, when Walter Bondurant bid," &c.

The sheriff's deed to the plaintiff was also offered in evidence, which recited the same facts.

The defendant proved, and the fact is found by the court, that there was no actual seizure of the property in dispute, the sheriff of the parish of Tensas not being in the habit of making actual seizures, and the only notice of seizure was by posting upon the court-house door a notice of seizure to the said Horace, Albert, and John Bondurant, as absentees, and that the defendant had no knowledge of any proceeding to divest his title until March, 1869, long after the sale.

Upon these facts the defendant requested the court below to decide that a reinscription of the mortgage within ten years was necessary to its validity, but the court held that the period of the war of rebellion was to be deducted from the period prescribed for the reinscription of mortgages.

The defendant also requested the court to decide—

1st. That it is essential to the validity of a sheriff's return to a writ of execution that it should be signed by him or his deputy, in order to validate an adjudication of sale.

2d. That in order to make valid a sale of tangible property in all the parishes of Louisiana, except Orleans and Jefferson, there must be an actual seizure by the sheriff on execution.

3d. That in order to divest the title of the defendant, notice of seizure, upon Bondurant at least, if not upon the defendant, was essential.

But the court ruled that inasmuch as the mortgage contained the pact *de non alienando*, the defendant was not to be considered in possession against the plaintiff, and that it did not matter what irregularities were in the sheriff's proceedings in selling the property, as Watson could not avail himself of them.

Judgment having been given accordingly for the plaintiff, Watson brought the case here.

*Messrs. G W. Race and E. T. Merrick, for the plaintiff in error; Mr. C. L. Walker, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

Without adverting to the other questions raised by the defendant, we are of opinion that the court erred in declining to allow the objection as to the want of seizure under the execution. The law of Louisiana seems to us very clearly to require an actual seizure in the country parishes. The parishes of Orleans and Jefferson are an exception, and that very exception makes the existence of the rule in other parishes more clear and distinct. The act of 1857 declares that in the parishes of Jefferson and Orleans " the registry in the mortgage office shall be deemed and considered as the seizure and possession by the sheriff of the property therein described, and it shall be unnecessary to appoint a keeper thereof." This act is itself constructive of the force and effect of the general law. That law (Code of Practice, Article 642) prescribes the form of the writ of *fieri facias*, which must command the sheriff to seize the property of the debtor. Article 643 declares that " as soon as the sheriff has received this writ he must execute it without delay by seizing the property of the debtor." The code then goes on to direct the sheriff as to further proceeding. He must give notice to the debtor to appoint an appraiser, &c. Article 656 declares that " when the sheriff seizes houses or lands he must take at the same time all the rents, issues, and revenue which this property may yield." Article 657 says, if it be land or a plantation which he has taken, unless the same be leased or rented, it shall remain sequestered in his custody until sale. " Consequently," says the law, " he may appoint a keeper or an overseer to manage it, for whom he shall be responsible." Article 659 declares that when the objects seized consist of money, movables, or beasts, he shall put them in a place of safety, &c. Article 690 declares that the

adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged.

Other sections are equally suggestive on this point.

The courts of Louisiana hold the seizure to be essential, and that a sale without it fails to transfer title to the purchaser.

In the case of *Goubeau* v. *New Orleans and Nashville Railroad Company*,* it was held that in order to make a legal and valid seizure of tangible property from which the seizing creditor may acquire a privilege in the thing seized, it is necessary that the sheriff should take the object seized into his possession; and the mere levying of an execution upon property found in the hands of the debtor, or of a third person, without showing that the sheriff took it into his actual possession, at least when he levied the writ, is not sufficient to confer any right on the creditor. This doctrine is affirmed in *Simpson* v. *Allain*,† in *Fluker* v. *Bullard*,‡ *Offut* v. *Monquit*,§ *Taylor* v. *Stone*,|| *Gaines* v. *Merchants' Bank*.¶

The cases here referred to are mostly cases of personal chattels, or securities. But the same doctrine has been held in regard to lands. In the recent case of *Corse* v. *Stafford*,** which was a petitory suit to recover a tract of land and plantation claimed by the plaintiff under a sheriff's sale, it was held that the sale was void because no actual seizure had been made. It appeared in that case, that the sheriff did no more than go on the plantation, read the writ to the parties, and give them notice of seizure, without doing anything else to indicate a seizure. The court said: "Under the sheriff's sale, we think, the plaintiff did not acquire title, because it was never taken into the possession of the sheriff, and, therefore, that he cannot maintain his petitory action. It has frequently been decided that a sheriff's sale, without a valid seizure, confers no title."††

* 6 Robinson, 348.    † 7 Robinson, 504.    ‡ 2 Annual, 338.
§ Ib. 785.    || Ib. 910.    ¶ 4 Id. 370.
** 24 Louisiana Annual, 263.
†† 11 Annual, 761; 12 Id. 275; 19 Id. 58; 22 Id. 207; 23 Id. 512.

The case of *Corse* v. *Stafford*, it is true, arose under an order of seizure and sale. But the same rule was held by the Supreme Court of Louisiana in 1856, in the case of *Williams* v. *Clark*,\* with regard to sales under *fieri facias*. The plaintiff in that case claimed the land in question under a sheriff's sale made by virtue of a *fieri facias* issued on a judgment upon an attachment; and, whilst the judgment was held void on account of a defective citation, and of the fact that the attachment was set aside, the sale was also held void, because "no valid seizure was made of the property adjudicated." "The defendant," say the court, "at the date of the constructive seizure, and ever since, has been in actual possession of the property; no attempt was made to dispossess him. The defendant cannot be held to a constructive notice of an invalid seizure. A purchaser at a sheriff's sale, made without a previous seizure, acquires nothing, at least against a third party in possession."

These are cases where the validity of the sale was assailed in a collateral proceeding. Instances are still more numerous in which actions of nullity have been sustained on the same ground.†

That the person in possession should be actually turned out of possession, in order to constitute a valid seizure, is not understood to be necessary. But, under the rulings of the Supreme Court of Louisiana, it does seem to be necessary that there should be some taking of possession more than a mere constructive taking; perhaps a yielding to the sheriff's demand, and a consent to hold under him, on the part of the person in possession, is all that is required.

As this is a pure question of local law, we feel bound to follow the decisions of the highest court of Louisiana on the subject; and, according to those decisions, it seems clear that there was no valid seizure in this case.

We think, therefore, that for the failure to make any actual seizure of the land, the sale was void.

---

\* 11 Louisiana Annual, 761.

† See, amongst others, cases before cited; and see Kilbourne *v.* Frellsen, 22 Annual, 207.

In such a case as the present the importance of actual seizure is particularly obvious. The defendant was no party to the action brought on the mortgage. He knew nothing about it. Had his lot been seized by the sheriff, as it ought to have been, his attention would have been called to it. The seizure would have been notice. He could then have protected himself.

The pact *de non alienando* relieved the plaintiff from the necessity of making Watson a party to his action; but it did not relieve him from the necessity of pursuing the forms of law in making a compulsory sale.

This very question arose in a recent case,* in which the Supreme Court of Louisiana say:

" We concur with the plaintiff, that the insertion in the act of mortgage of the pact *de non alienando* does not invest the mortgage creditor with the right to disregard the forms of law in making the forced alienation of his debtor's property. . . . The advantage of this clause is to save the mortgage creditor the necessity of resorting to the delays of the hypothecary action. He can proceed to enforce his mortgage directly against his mortgage debtor, without reference to the transferee of that debtor. But still the transferee is subrogated to his vendor's right by virtue of the purchase, and has sufficient interest in the object of the contract of mortgage to sue to annul the sale, if the forms of law have not been complied with by the mortgage creditor of his vendor in making the forced sale."

By the same reason, and according to the cases above cited, he has the right in a collateral proceeding, to set up, by way of defence, the failure to follow those forms.

It has been suggested that the defendant could not go behind the sheriff's return to the writ of *fieri facias.* Had this return been duly authenticated by the sheriff's signature, as required by the code, perhaps there might have been plausibility in this objection; though under the Louisiana practice it would be very doubtful. But the return was incomplete

---

* Villa Palma *v.* Abat and Generes, 21 Annual, 11.

and presents no record evidence of the sheriff's acts.   We think the return under the circumstances was, at least, traversable, and that it was properly shown that no actual seizure of the property in dispute was ever made by the sheriff.

Judgment reversed, and

A venire de novo awarded.