Wilbur Ernest BONNER,

v.

B–W UTILITIES, INC., Percy Nichols, Individually and as President thereof, Charles H. Ryan, James W. Beaver, Hughie Perry, Individually and as Sheriff of Morehouse Parish, Louisiana, and William J. Guste, Jr., Individually and as Attorney General of Louisiana.

Civ. A. No. 18641.

United States District Court,
W. D. Louisiana,
Monroe Division.

June 19, 1978.

See also, D.C., 398 F.Supp. 1390.

Stephen J. Katz, Bastrop, La., Paul Henry Kidd, Monroe, La., for plaintiff.

Robert C. Cudd, III, Thompson, Sparks, Cudd & Dean, Monroe, La., for defendants B–W Utilities and P. W. Nichols.

Charles H. Ryan, in pro. per., for James W. Beaver and Charles H. Ryan.

Alex W. Rankin, Rankin & Yeldell, Bastrop, La., for Hughie Perry.

Robert C. Downing, Asst. Atty. Gen. for La., Monroe, La., for the Atty. Gen. of La.

Robert G. Pugh, Shreveport, La., amicus curiae.

## OPINION

DAWKINS, Senior District Judge.

We here are presented with an attack upon one aspect of Louisiana's statutory procedure for enforcing mortgage obligations on real property by *executory process.*

Wilbur Ernest Bonner seeks a declaratory judgment that article 2701 of the Louisiana Code of Civil Procedure, commonly known as the statutory pact *de non alienando* is unconstitutional because it provides for permanent deprivation of property without notice to the owner of that property; Bonner also seeks equitable relief restoring to him immovable property lost by its judicial sale.

Named defendants are B–W Utilities, Inc. (B–W), plaintiff in the State executory proceedings and purchaser of Bonner's property at the judicial sale; Percy Nichols,

President of B–W; Charles H. Ryan and James W. Beaver, Bonner's vendors; Hughie Perry, Sheriff of Morehouse Parish; and William J. Guste, Jr., Attorney General for the State of Louisiana. Only B–W actively defended the action.

Upon a stipulation of facts and documents, obviating need for a trial, we took the matter under advisement. All briefs, supplemental stipulations, and affidavits now having been filed, we proceed to decision upon the merits.

### Findings of Fact

In early 1966, Charles Ryan, an attorney, and James W. Beaver, then president of a large mortgage banking company, purchased Bartholomew Woods Subdivision in Morehouse Parish, Louisiana. Ryan and Beaver subdivided a portion of the property and negotiated with B–W Utilities, Inc., for installation and operation of a water distribution system.

As an inducement for B–W to undertake construction of the water system, Ryan and Beaver executed promissory notes for $200 per lot in favor of B–W. These obligations were secured by separate *in rem* mortgages on the unimproved parcels of real estate. In particular, Ryan and Beaver executed four notes secured by *in rem* mortgages upon Lots 4 and 5 of Unit No. 3 of the Subdivision and upon Lots 25 and 26 of Unit No. 2 of the Subdivision.

Each act of mortgage, executed before a Notary and two witnesses, contained a confession of judgment and the following clause, commonly referred to in Louisiana as the pact *de non alienando:*

"The mortgagors herein further promise not to alienate, deteriorate, or encumber the said property, except as hereinbefore provided to the prejudice of this mortgage, said property to stand thus mortgaged until the full payment of said note, interest, improvement, liens, taxes, insurance premiums, if any, and other costs and attorney's fees as aforesaid."

Ryan and Beaver explicitly waived rights of appraisal and formal or informal demand prior to the event of foreclosure.

The acts of mortgage duly were recorded in the mortgage records of Morehouse Parish.

In developing Bartholomew Woods, Ryan and Beaver employed Wilbur Ernest Bonner to perform certain clearing and grading work. Subject to the mortgages mentioned, Bonner was transferred ownership of two lots in exchange for his services. He purchased two additional lots for investment purposes. Bonner is a contractor and owner of a truck-stop; he is 47 years of age and has only a ninth grade education.

Acts of sale from Ryan and Beaver to Bonner were executed on June 19, 1967, for Lots 25 and 26, and, on December 8, 1967, for Lots 4 and 5. These duly were recorded in the conveyance and mortgage records of Morehouse Parish.

Both acts of sale contain the following reference:

"This sale is made subject to a water lien mortgage affecting each lot, in the amount of $200.00, . . . "

Bonner contends he did not know the four lots were encumbered by a mortgage in favor of B–W. He did not contact B–W, assume the obligation, or make arrangements to pay the indebtedness.

B–W was provided periodically with lists of Bartholomew Woods lot purchasers and, when known, their addresses. Efforts to collect from delinquent owners were pursued for several years. B–W has filed copies of several demand letters addressed to W. E. Bonner, Route 2, Bastrop, Louisiana, which we paraphrase as follows:

| | |
|---|---|
| May 31, 1968 | – Notice that annual instalment on lots is past due and demand for payment so that future action will be unnecessary. |
| April 21, 1969 | – Notice that payments are three years delinquent on lots and demand for payment. |
| April 28, 1970 | – Notice that Bonner is four years delinquent and demand for payment. |
| April 7, 1971 | – Notice that unpaid balance is due on all four lots in its entirety. |

October 22, 1971 — Letter by Robert C. Cudd III, Attorney for B–W. Utilities, seeking full past-due amount, stating:

"We would very much prefer to collect this indebtedness without the necessity of foreclosure proceedings and incidental costs and attorney's fees, however, if we have not received payment in full of the amount of $1,085.34 by November 1, we will promptly institute an appropriate suit."

Bonner denies ever receiving any of these notices. From 1968 to 1971, B–W wrote to as many as forty-one delinquent lot owners at a time. By November, 1971, full payment had been received on all but six of the mortgage notes. B–W's correspondence to Bonner was addressed correctly, and we must presume that at least some of these letters reached the intended addressee.

On November 18, 1971, B–W filed a "Petition for Executory Process" in the Fourth Judicial District Court for Morehouse Parish, styled B–W Utilities, Inc., vs. Lots 25 and 26, Unit 2, and Lots 4 and 5, Unit 3, Bartholomew Woods Subdivision, No. 24,-996. The suit prayed that a writ issue to Hughie Perry, Sheriff of Morehouse Parish, directing seizure and sale of the lots, without benefit of appraisement, to pay the unsatisfied claims of B–W on the promissory notes executed by Ryan and Beaver.

The Petition for Executory Process and exhibits were reviewed by State District Judge Fred Fudickar, Jr., and an order issued directing seizure and sale of the four lots. Written notice of the seizure was given to Ryan and Beaver; notice of the proposed sale was published in the *Bastrop Daily Enterprise* on November 3 and December 20, 1971. Offered at sheriff's sale on December 29, 1971, the four lots were purchased by B–W for a bid of $530.56, $400 of which was credited upon the mortgage indebtedness.

Bonner was not given direct notice of the executory proceedings, seizure, and pending sale of his property. He first learned that his four lots had been offered at sheriff's sale and transferred to B–W several months after the fact.

### The Louisiana Procedure

In this State, executory process is used to enforce a mortgage containing a confession of judgment, without previous citation and judgment, by act of seizure and judicial sale of the mortgaged property. La.C.C.P. art. 2631.[1] A creditor institutes the action by filing a petition along with the note evidencing the obligation, the authentic act of mortgage importing a confession of judgment, and any other documents necessary to prove the right to use executory process. La.C.C.P. arts. 2634, 2635.[2] If the reviewing Court determines that the creditor is entitled to foreclosure *via* executory process, an order is issued directing the Sheriff

1. "Art. 2631. Use of executory proceedings

"Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law."

2. "Art. 2634. Petition

"A person seeking to enforce a mortgage or privilege on property in an executory proceeding shall file a petition therefor, praying for the seizure and sale of the property affected by the mortgage or privilege. This petition shall comply with Article 891, and the plaintiff shall submit therewith the exhibits mentioned in Article 2635."

"Art. 2635. Authentic evidence submitted with petition

"The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:

(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege;

(2) The authentic act of mortgage or privilege importing a confession of judgment; and

(3) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.

This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law."

to seize and sell the mortgaged property. La.C.C.P. art. 2638.[3]

A person who acquires property subject to a mortgage and who has not assumed the payment of the indebtedness secured by the mortgage is referred to as a third possessor. When property subject to the mortgage has been sold to a third possessor, the creditor may enforce his security interest by executory process against his debtor, without making the current owner a party to the proceedings. La.C.C.P. art. 2701 provides:

"A mortgage or privilege evidenced by authentic act importing a confession of judgment, affecting property sold by the original debtor or his legal successor to a third person, may be enforced against the property without reference to any sale or alienation to the third person. The executory proceeding may be brought against the original debtor, his surviving spouse in community, heirs, legatees, or legal representative, as the case may be. The third person who then owns and is in possession of the property need not be made a party to the proceeding."

Demand for payment must be made upon the debtor three days prior to issuance of the writ of seizure and sale. La.C.C.P. art. 2639. But, the right to receive the demand prior to seizure may, and customarily is, waived in the act of mortgage. La.C.C.P. art. 2639.[4] If the three-day demand is waived, seizure takes place immediately. Generally, the seizure of immovable property by the Sheriff is constructive, evidenced only by recordation of the writ of seizure

with the recorder of mortgages. La.R.S. 13:3851–58. Notice of seizure must be served upon the debtor; this notice cannot be waived. La.C.C.P. art. 2721.[5] Not being parties to the proceedings, there is no statutory requirement that third possessors be given any of these notices.

The Sheriff first advertises the property for sale three days after service of notice of seizure upon the debtor. This first publication must precede the date of judicial sale by at least thirty days. A second advertisement is required, no earlier than seven days prior to the offer for sale. La.C.C.P. art. 2331, La.R.S. 43:203. At the time and place designated for the sale, the Sheriff reads aloud the advertisement describing the property and the mortgage certificate as required by law. The property is offered for sale to the highest bidder, subject to security interests superior to that of the seizing creditor. At any time prior to the judicial sale, the debtor may terminate the proceedings by paying what is owed, together with interest and costs.

Objections or defenses to seizure and sale may be raised by suspensive appeal from the order directing issuance of the writ or by an injunction arresting seizure and sale.

A third possessor who learns of executory proceedings against his property may:

1. Pay the balance due on the indebtedness, in principal, interest, attorney's fees, and costs;

2. Arrest the seizure and sale when the debt secured by the mortgage is ex-

---

3. "Art. 2638. Order for issuance of writ of seizure and sale

"If the plaintiff is entitled thereto, the court shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property affected by the mortgage or privilege, as prayed for and according to law."

4. "Art. 2639. Demand for payment

"Before issuing the writ of seizure and sale, the clerk shall issue a demand upon the defendant for payment of the amount due and all costs of court. This demand shall notify the defendant that, in default of payment within three days of service, exclusive of holidays, a writ of seizure and sale will be issued and the property described in the petition will be seized and sold according to law.

The demand for payment need not be issued if it has been waived by the debtor in the act of mortgage or privilege; and in such event, the clerk shall issue the writ of seizure and sale immediately."

5. "Art. 2721. Seizure of property; notice

"The sheriff shall seize the property affected by the mortgage or privilege immediately upon receiving the writ of seizure and sale, but not before the expiration of the delay allowed for payment in the demand required by Article 2639, unless this demand has been waived.

The sheriff shall serve upon the defendant a written notice of the seizure of the property."

tinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed; or on the ground that the mortgage was not recorded, or that the inscription on the recordation thereof had perempted; or

3. Intervene in the executory proceeding to assert any claim which he has to the enhanced value of the property due to improvements placed on the property by him or by any prior third possessor through which he claims ownership of the property. La.C.C.P. art. 2703.

### Conclusions of Law

We have jurisdiction over the parties and subject matter of this action and venue is proper. 28 U.S.C. § 1343(3) and (4), 42 U.S.C. § 1983, 28 U.S.C. § 1391(b).

Plaintiff brings this action for declaratory and equitable relief under 42 U.S.C. § 1983, calling into question the constitutional sufficiency of Louisiana's statutory procedure for enforcing real mortgages by executory process without notice to transferees of the mortgagor. This action does not put at issue the constitutionality of Louisiana's general scheme of confession of judgment and executory process. Nor does this case raise questions of the need for a pre-seizure hearing. Plaintiff apparently concedes that Louisiana procedure gives adequate protection to a third possessor who learns of the executory proceeding prior to judicial sale. The real questions are whether the Fourteenth Amendment's guarantee that no State shall deprive any person of property without due process of law requires that third possessors be given personal, rather than published, notice of the seizure and pending sale of their property; and, if personal notice constitutionally is required, whether plaintiff effectively waived this right.

B–W argues that any attack on the constitutionality of Louisiana C.C.P. art. 2701 is moot because the act of mortgage by Ryan and Beaver contained the contractual pact *de non alienando* creating foreclosure privileges independent of the statute.

Prior to enactment of art. 2701, in 1960, creditors in executory proceedings could ignore subsequent transferees only if the act of mortgage included agreement that the mortgagor would not alienate the property to the prejudice of the mortgagee. Under Louisiana jurisprudence, the contractual pact *de non alienando* clause allowed mortgagees to proceed directly against the mortgagor and have the property seized and sold without resort to the hypothecary action and often without notice to actual third possessors, in accord with Spanish rules of practice once in effect. The Spanish law considered transfers to third possessors to be null and void. *Nathan v. Lee,* 2 Mart. (N.S.) 32 (La.1823); *Donaldson v. Maurin,* 1 La. 29 (1830). Article 2701, enacted in 1960, established a statutory pact *de non alienando* as to all mortgages and privileges evidenced by authentic acts importing a confession of judgment. Consequently, non-alienation pacts in these instruments no longer became necessary.

Since the procedural due process of the Fourteenth Amendment speaks only to the States, it is essential to plaintiff's cause of action that there be State action. We view B–W's contention that the constitutional challenge is moot as denying the existence of State action.

■ Without question the procedures invoked by B–W to enforce its security interest in Bonner's property involved direct State action. Executory process remedies are State created and State-supervised. The full power of the State, exercised through its clerks, judges, and sheriffs, is marshalled behind the creditor to achieve a judicial sale. Although essential to insure collection of debts, still the procedure for enforcing these commercial obligations is subject to the countervailing constitutionally protected interests of the individual. Even if a valid debt exists, the State cannot establish arbitrary or unfair procedures for enforcement of that debt.

■ At a minimum, the Due Process Clause of the Fourteenth Amendment re-

quires that *any* deprivation of life, liberty, or *property* be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Execution of B–W's mortgage on Lots 4, 5, 25, & 26, resulting in a final judicial sale without right of redemption, clearly deprived Bonner of an interest in property protected by the Fourteenth Amendment. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Louisiana's executory procedure provides third possessors with opportunity for hearing prior to judicial sale of their property. La.C.C.P. art. 2703. But when no actual notice of the proceedings prior to sale of the property is given, statutory rights to assert defenses or pay the indebtedness become meaningless.

We earlier have referred to disparate versions of the facts in this case. Bonner denies learning of the mortgage in B–W's favor until months after the properties' judicial sale. B–W points to the correspondence directed to Bonner and in particular the final letter threatening foreclosure if the balance due was not paid by November 1. It is fair to assume that Bonner knew of B–W's claim against his property. But notice of the claim is not the same as notice that proceedings have been instituted which may terminate a landowner's interest in property. "Notice," as here used, has constitutional sanction because it is necessary to insure that persons whose interests will be affected will be heard. "For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented." *Fuentes, supra,* at 81, 92 S.Ct. at 1994. Thus, notice necessarily must show that judicial proceedings have been instituted, identifying the action number and the forum. See *Ross v. Brown Title Corp.,* 356 F.Supp. 595 (E.D.La.1973) (three-judge

Court) aff'd 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1973). Creditors' warnings that foreclosure proceedings *may be instituted are not sufficient.* See *Memphis Light, Gas and Water Division v. Craft,* —— U.S. ——, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

Louisiana's statutory scheme of executory process envisions that notice of the proceedings will be given third possessors by newspaper publication only. While notice of seizure must be served upon the debtor, third possessors need not be joined in the action terminating their own property rights. La.C.C.P. arts. 2701, 2721. Official Revision Comments to article 2721 frankly admit that:

"b.   *   *   *

*   *   * The third possessor may have a substantial claim for the enhanced value of the mortgaged property due to improvements which he placed thereon, which may be completely lost through a judicial sale of the property before the third possessor ever learns of the institution of the executory proceeding. For this reason, the second paragraph prevents a waiver of the sheriff's notice of seizure in any case.

In the great majority of cases the third possessor will be informed of the seizure by the mortgagor on whom the sheriff has served notice thereof, yet occasionally the information may not be received in this manner. However, any requirement of service of seizure by the sheriff upon the person in possession of the property would destroy the efficacy of the executory process."

The notice required by due process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane, supra,* 339 U.S. at 314, 70 S.Ct. at 657 (citations omitted). The reasonableness, and hence the constitutional validity, of any chosen method of notice may be defended on the ground that it is itself reasonably certain to inform those

affected, or, where conditions reasonably do not permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. *Mullane, supra.*

Notification by classified advertisement in a local newspaper is a particularly ineffective way to alert those in jeopardy of losing substantial property rights. The Court, in *Mullane,* concerned with notice by publication to members of a common trust fund, commented:

> "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back [classified] pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to [his] attention." *Mullane, supra,* at 315, 70 S.Ct. at 658.

The constitutional requirement that notice be calculated reasonably to reach interested persons long has been observed regarding deprivations of real property. In *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), and *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), State statutes authorizing notice of condemnation proceedings by publication only were found constitutionally deficient. Under the facts in each case, the names and addresses of landowners were readily ascertainable from deed records and tax rolls. Speaking for the Court in *Walker,* Justice Black concluded:

> "Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs the landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized

the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value." 352 U.S. at 116, 77 S.Ct. at 202.

Notwithstanding, there are situations where resort to publication is acceptable. Often, more direct means of communication are not reasonably possible or practicable, as in the case of absentees for whom no address is known. Further notice by publication may be acceptable when reinforced by other steps likely to attract the party's attention. The act of seizure often will alert a landowner that his right to continue possession is under attack. But, there is no additional warning when the affected property is undeveloped and uninhabited and the act of seizure is evidenced only by recordation of the writ of seizure with the recorder of mortgages.

■ When property owned by a third possessor is secured by an *in rem* mortgage or is valued in excess of any secured indebtedness, service of notice of seizure required by art. 2721 upon the original debtors accomplishes nothing. The original mortgagor has no stake in the proceedings. It is the third possessor whose interest ought to be protected; and where his name and address are known to the seizing creditor it is a denial of due process not to direct some form of notice of the judicial proceedings to the property owner in addition to general publication. Bonner lost property worth possibly $10,000 in satisfaction of a $1,000 obligation. Whatever his reasons for failing previously to pay the indebtedness, we think it reasonable to assume that upon being informed that his property had been seized and was subject to imminent sale, he would have exercised his article 2703 right to pay the relatively small amount owed and maintain possession.

Long before enactment of the present executory procedures, the Supreme Court, in *Watson v. Bondurant,* 88 U.S. (21 Wall.) 123, 22 L.Ed. 509 (1874), had occasion to observe the dilemma caused by literal enforcement of the contractual pact *de non alienando.* Finding that the pact did not excuse compliance with the formalities required in compulsory sales, in particular where there is actual seizure of the property, Justice Bradley stated:

> "In such a case as the present the importance of actual seizure is obvious. The defendant was no party to the action brought on the mortgage. He knew nothing about it. Had his lot been seized by the sheriff, as it ought to have been, his attention would have been called to it. The seizure would have been notice. He could then have protected himself."

At 129.

■ The very least a person may expect before the State seizes and sells his real property, unless he expressly waives these rights, is that a reasonable attempt will be made to notify him of the proceedings.

■ Due process rights to notice and hearing are subject to waiver. *D. H. Overmayer Co., Inc., v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Fuentes, supra.* In commercial situations, persons frequently agree contractually to forego rights secured by the Constitution. But see *Isbell v. County of Sonoma,* 21 Cal.3d 61, 145 Cal.Rptr. 368, 577 P.2d 188 (1978).

■ Bonner did not enter a contractual agreement with B–W, nor was he personally responsible for the notes executed by Ryan and Beaver. Bonner's concern with B–W derives from the *in rem* mortgages on his property securing the notes. As long as the notes remained unpaid, Bonner's four Bartholomew Woods lots were subject to seizure and sale, regardless of his alleged lack of knowledge of the encumbrances. B–W argues that, by purchasing subject to the outstanding recorded mortgages, Bonner was put on notice by provisions in that act of mortgage that foreclo-

sure could result. Even if we were to accept that Bonner acquiesced in all waivers of rights entered by Ryan and Beaver as mortgagors, there is no contractual language which would amount to a waiver of notice of judicial proceedings to seize and sell the property. The mortgagors waived appraisal and the notice of demand provided by law. There is no waiver of notice of seizure or pending sale of the property. An alleged waiver of constitutional rights must be clear indeed. *Fuentes, supra,* 407 U.S. at 95, 92 S.Ct. 1983.

■ Our finding that Bonner was entitled to some form of personal notice of the executory proceedings here is predicated strictly upon the present factual setting. The type of notice required by the Due Process Clause is flexible, the result of balancing the potential benefits of a particular form against its disadvantages. *United States v. Steel Tank Barge H 1651,* 272 F.Supp. 658 (E.D.La.1967). Where a third possessor is a local resident whose name and address are known to the creditor and shown on Parish tax, conveyance, and mortgage records, there simply is no reason not to attempt to notify him of the proceedings. The effort required to send minimal information by ordinary mail or telephone is too slight even to impair the efficacy of executory process.

■ Plaintiff argues that article 2701 is unconstitutional on its face and as applied to him. In spite of the practice under article 2701, its provisions are not necessarily facially invalid. Procedural due process does not require that third possessors be joined as parties in executory proceedings or that they be personally served with a writ of seizure; it mandates that reasonable attempts be made to notify known third possessors.

Finding that the procedures by which judicial sale of Bonner's property was effected violated the Fourteenth Amendment, that sale must be declared null. The property remains undeveloped and is in B–W's possession, but the stipulated facts do not indicate whether B–W Utilities' mortgage has been cancelled. Accordingly, as part of

the judgment to be entered in accordance with this opinion, Bonner will be required to pay as a prerequisite to restored possession of his property the balance owed B–W on the secured notes, interest to the date of the 1971 judicial sale, costs of that sale, back taxes, and interest at the rate of 7% *per annum* on the balance due B–W from the date of the judicial sale to the present.

All other relief sought is denied.