490 So.2d 322 (1986)
Doris Lancaster MAGEE
v.
Honorable J. Al AMISS, Sheriff, East Baton Rouge Parish, Louisiana, et al.
No. CA 85-0375.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
Roger M. Fritchie, Baton Rouge, for plaintiff-appellant Doris Lancaster Magee.
Warren L. Mengis and James H. Morgan, III, Baton Rouge, for third party-appellee/ defendant Reynolds Roofing Co., Inc.
Gerard E. Kiefer, Baton Rouge, for third party-appellee/plaintiff Don Alan Iglehart and Connie Summers Iglehart.
Dennis A. Pennington, Baton Rouge, for defendant-appellee/River City Federal Sav. & Loan Ass'n.
*323 Michael R. Connelly, Baton Rouge, for defendant-appellee Archibald C. Magee.
Douglas L. Nicholson, Baton Rouge, for third party-appellee/defendant Linda Rushing Stockmann & H. Mitchell Stockmann.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.

THE PLEADINGS
JOHN S. COVINGTON, Judge.
Doris Lancaster Magee brought suit to nullify a judicial sale of community property, naming as defendants J. Al Amiss, Sheriff of East Baton Rouge Parish, Don Alan Iglehart and Connie Summers Iglehart, (hereafter Igleharts), River City Federal Savings and Loan Association, and Archibald C. Magee, Sr., hereafter Dr. Magee. The Igleharts third partied Sheriff Amiss, Mr. and Mrs. Mitchell Stockmann, (hereafter Stockmanns), their vendor, and Reynolds Roofing Company, Inc., (hereafter Reynolds), the judgment creditor which precipitated the sheriff's sale. As a part of the Igleharts' third party petition against the Stockmanns, they called in warranty their vendors "to defend this action against the [Igleharts] and to make restitution to [them] for any losses, costs, or expenses, as well as damages for loss of appreciation of the subject property and for the inconvenience and mental anguish suffered by [them]." All the original defendants answered, generally denying liability to Mrs. Magee. Reynolds filed a peremptory exception pleading the objection of prescription to the Igleharts' third party petition. The Stockmanns and Sheriff Amiss answered the Igleharts' third party petition. Sheriff Amiss moved for summary judgment in Mrs. Magee's suit and it was granted on September 3, 1982; the formal judgment was signed September 13, 1982. That summary judgment is not before us in this appeal.
On February 6, 1984 the Stockmanns amended their answer to the Igleharts' third party demand and call in warranty, impleading Dr. Magee, an absentee, and Reynolds, seeking indemnification for any sums they might be required to pay the Igleharts, as well as any costs or expenses incurred. Reynolds responded to the Stockmann third party demand by filing peremptory exceptions pleading the prescription of one year and no right of action. At the same time Reynolds answered the separate third party demands of the Stockmanns and the Igleharts, it moved for summary judgment against the Stockmanns and the Igleharts. Within a few days after the filing of Reynolds' motion for summary judgment and exhibits, the Stockmanns moved for summary judgment against the Igleharts, "adopt[ing] and incorporat[ing] herein by reference the memorandum in support of motion for summary judgment filed by Reynolds ..." About two months later River City moved for summary judgment against Mrs. Magee on the basis of the Public Records Doctrine and under La. C.C. articles 2265 and 2266 and La.R.S. 9:2721, asserting it acquired from the Igleharts "a full interest mortgage" on the Magee property acquired by the Stockmanns at the Sheriff's Sale and subsequently conveyed to the Igleharts.
The trial court heard and granted all three motions for summary judgment on October 5, 1984 and signed the formal judgment on January 3, 1985, dismissing (1) Mrs. Magee's suit against River City and the Igleharts, (2) the Igleharts' third party demand and call in warranty against the Stockmanns and the Igleharts' third party demand against Reynolds, and (3) the Stockmanns' third party demand against Reynolds. It is this judgment that is before us on appeal.

FACTS
Dr. Archibald C. Magee, Sr. and Doris Lancaster Magee were married when they purchased the immovable property on September 1, 1970 which is designated as Lot Number Forty-Three (43) of East Broadmoor Subdivision by Act of Sale with Assumption of Mortgage. They were judicially separated by judgment read, rendered and signed on July 9, 1971 in proceedings entitled "Doris Lancaster Magee vs. Archibald *324 Carter Magee" of the Family Court of East Baton Rouge Parish, bearing docket number 22,285. David S. Bell, of the law firm which represents Mrs. Magee in this present litigation, represented Mrs. Magee in the separation proceedings.
Shortly after the judicial separation Mrs. Magee moved to Virginia. The record does not reflect whether either Dr. Magee or Mrs. Magee ever obtained a judgment of divorce.
Certificates issued by the Clerk of Court dated August 23, 1984 reflect that the judgment of separation was not recorded in the mortgage records of East Baton Rouge Parish until April 30, 1980 and that there were no community property settlements or notice of lis pendens by the Magees for a period of twenty (20) years prior to issuance of said certificate.
Dr. Magee continued to reside in the property and on or about February 8, 1978 Reynolds installed a new roof on the residence "at the request of the owner" as reflected by the February 27, 1978 affidavit establishing lien and privilege as a furnisher of labor and materials in the amount of $1,856.00 plus recording costs.
Reynolds obtained judgment against Dr. Magee for $1,856.00 on September 11, 1979 and the formal judgment was read and signed on September 14, 1979. Dr. Magee was represented by Michael R. Connelly in the Reynolds suit and in the instant matter. Mrs. Magee's first amending petition seeks, in the alternative, a money judgment against Dr. Magee for $30,000.00.
The Igleharts paid the Stockmanns $85,000.00 a few weeks after the Sheriff's sale.
The sheriff paid $30,646.76 to Dr. Magee after deducting Reynolds' judgment, the conventional mortgage balance, and expenses of the sale from the Stockmanns' bid of $49,000.00.

ASSIGNMENTS OF ERROR
Mrs. Magee assigns as errors by the trial court its
(1) granting the motions for summary judgment because the seizure and sale of Mrs. Magee's one-half undivided interest in the property was unconstitutional;
(2) in the alternative, in failing to find that the sale of the whole was null and void because an undivided one-half interest in the property sold belonged to a person other than the judgment debtor.

ISSUES
Did the seizure and sale of the real estate owned by Dr. and Mrs. Magee in indivision violate the due process rights of the co-owner who was not cited and served or otherwise notified in the proceedings for seizure and sale?
In the absence of citation and service on a co-owner or other notice to him or her, is the sale of the whole property null and void?

DUE PROCESS
Mrs. Magee argues that the sale of the whole property at the April 2, 1980 sheriff's sale has deprived her of property without due process of law and that
... Even though she could have filed that judgment of separation from bed and board, such is not sufficient to redeem the unconstitutional deprivation of property which resulted when ... [she] was not properly notified of the pending seizure and sale of the property.
Mrs. Magee cites, in support of her claim of unconstitutional deprivation Kirchberg v. Feenstra, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981), Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and Bonner v. B-W Utilities, Inc., 452 F.Supp. 1295 (W.D., La.1978).
Mennonite Board of Missions, supra, is distinguishable on its facts. MBM had a security interest in real estate in Indiana; that security interest was evidenced by a mortgage which was recorded in the County Recorder's Office. The property was sold for taxes when the mortgagor failed to pay them. The mortgagee was not notified that taxes had not been paid and was not *325 notified that the property would be sold for delinquent taxes. Indiana law entitled the owner of the property to notice by certified mail to his last known address but did not provide for notice by mail or personal service to mortgagees that mortgaged property was to be sold for nonpayment of taxes. Marshall, J., reasoned that
... Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee.
and held that
... Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable....
103 S.Ct. at 2711-2712.
Bonner, supra, is also distinguishable on its facts and, in Judge Dawkins' own words,
Our finding that Bonner was entitled to some form of personal notice of the executory proceedings here is predicated strictly upon the present factual setting. The type of notice required by the Due Process Clause is flexible, the result of balancing the potential benefits of a particular form against its disadvantages.... Where a third possessor is a local resident whose name and address are known to the creditor and shown on Parish tax, conveyance, and mortgage records, there simply is no reason not to attempt to notify him of the proceedings. The effort required to send minimal information by ordinary mail or telephone is too slight even to impair the efficacy of executory process.
452 F.Supp. at 1303. (Emphasis supplied.)
The "third possessor," Mr. Bonner, acquired four lots in a subdivision which were burdened with an in rem mortgage on each in favor of B-W Utilities as security for B-W Utilities having made water service available to each lot. Each mortgage instrument contained a confession of judgment and the pact de non alienando clause. Each act of acquisition by Bonner stated "This sale is made subject to a water lien mortgage affecting each lot, in the amount of $200.00, ..." B-W Utilities, or its attorney, mailed five letters over a period of almost three and one-half years, each letter reminding Bonner the mortgage indebtednesses remained unpaid and, in the final letter, the admonition to pay the full amount by November 1, 1971 or "we will promptly institute an appropriate suit" to foreclose. When B-W filed its "petition for Executory Process," naming the specified lots as parties defendant, written notice of the seizure was given to Bonner's vendors but not to Bonner. B-W purchased the lots at Sheriff's Sale for $530.56; the "property [was] worth possibly $10,000." 452 F.Supp. at 1302.
Judge Dawkins ordered the property restored to Bonner upon his paying B-W "the balance owed ... on the secured notes, interest to the date of the 1971 judicial sale, costs of that sale, and interest ... on the balance due B-W from the date of the judicial sale to the present." 452 F.Supp. at 1304.
In Kirchberg v. Feenstra, supra, Mr. Feenstra unilaterally executed a mortgage on community property in 1974, the family home, to secure a promissory note he gave his counsel, Kirchberg, "in prepayment for legal services to be performed by" Mr. Kirchberg. The property stood in the name of both spouses. Mrs. Feenstra was not informed about the mortgage which her husband executed under authority of La.C.C. art. 2404 as it existed in 1974. Mr. Kirchberg filed a suit for declaratory judgment in federal district court in 1976, seeking a declaration that he had not violated the federal Truth in Lending statute, 15 U.S.C.A. § 1601 et seq. Mrs. Feenstra answered and counterclaimed, alleging as a second item of her counterclaim that Article 2404 was unconstitutional. The district court, characterizing Mrs. Feenstra's claim *326 of unconstitutionality of the head and master concept as an attack on "the bedrock of (430 F.Supp. 642, 644 (1977)), Louisiana's community property system," granted Louisiana's motion for summary judgment.
While Mrs. Feenstra's appeal was pending before the U.S. Court of Appeal for the Fifth Circuit, the Legislature enacted Act 709 of 1979, which revised the community property law, including La.C.C. arts. 2334 and 2404, effective January 1, 1980. As revised, the codal articles abandoned the "head and master" concept stated in La. C.C. art. 2404. La.C.C. art. 2334, in 1974, provided, in pertinent part, as follows:
Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.
As amended by Act 679 of 1976, effective January 1, 1977, the excerpt above was amended to read as follows:
Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold without the wife's written authority or consent.
The first paragraph of La.C.C. art. 2404, as it read prior to January 1, 1980, stated, in pertinent part, that:
The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
Effective January 1, 1980, "The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, ..." La.C.C. art. 2347.
The U.S. Fifth Circuit Court of Appeals, per Randall, C.J., declared "that article 2404 of the Louisiana Civil Code is unconstitutional as a denial of the equal protection of the laws under the fourteenth amendment ..." and expressly applied the decision "prospectively only, because a holding of retroactive invalidity ... would create a substantial hardship with respect to property rights and obligations within the State of Louisiana." In deciding to apply its holding prospectively only, the Court reasoned that:
... The concept of the husband as head and master of the community of gains has been a part of Louisiana law since 1808, Louisiana Civil Code of 1808, art. 66, and before that first codification of Louisiana law it was apparently part of the Spanish Civil Law effective in that region at the time of the Louisiana Purchase,... Since our decision could produce substantial inequitable results if applied retroactively, we avoid that "injustice or hardship" through a holding of nonretroactivity.
609 F.2d 727, 736.
The decision was handed down December 12, 1979; its rationale and holding was affirmed by the United States Supreme Court, per Marshall, J., on March 23, 1981. 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981).
After stating appellant Kirchberg's contention that "the opinion of the Court of Appeals is ambiguous on whether the court intended to apply its prospective ruling to his mortgage, which was executed in 1974, or only to those dispositions of community property made pursuant to Art. 2404 between December 12, 1979, the date of the court's decision, and January 1, 1980, the effective date of Louisiana's new community property law," Justice Marshall, for the 7-2 majority, "decline[d] to address appellant's concerns about the potential impact of the Court of Appeals' decision on other mortgages executed pursuant to Art. 2404" and stated unequivocally "[t]he only question properly before us is whether the decision of the Court of Appeals applies to the mortgage in this case, and on that *327 issue we find no ambiguity." 101 S.Ct. at 1199-1200. (Emphasis supplied.)
Because the mortgage in Kirchberg v. Feenstra was a conventional mortgage, we find the facts of that litigation distinguishable from the present case and the holding of unconstitutionality to have no value in disposing of the issues raised in this appeal.
The judgment in the proceedings entitled and numbered "Reynolds Roofing Company, Inc. versus Archibald C. Magee," # 211,231 of the 19th Judicial District Court, was rendered on September 11, 1979 and the formal judgment was read and signed on September 14, 1979. The second and fourth paragraphs of the judgment makes it clear that citation and service of process was made on Dr. Magee because he reconvened for a partial offset and was granted it. The judgment was attached as an exhibit to Reynolds' motion for summary judgment.
The Codal articles in effect when Dr. Magee contracted with Reynolds for the new roof, when Reynolds filed its laborers and materialmen's lien, when suit was filed to enforce the lien, and when judgment was rendered in Reynolds' favor, and when that judgment became final, established the presumption that the Magee residence was community property. Mrs. Magee, having failed to record the judgment of separation in the mortgage records and having failed to file a notice of lis pendens, did nothing to refute the existence of the presumption of community. La.C.C. art. 2399 et seq. La.C.C.P. art. 735, before January 1, 1980, when it was amended by Act 711 of 1979, provided that "[t]he husband is the proper defendant in an action to enforce an obligation against the marital community." As amended, Article 735 states, inter alia, that (1) during the existence of the marital community "either spouse is the proper defendant ... in an action to enforce an obligation against community property" and (2) "[w]hen only one spouse is sued to enforce an obligation against community property, the other spouse is a necessary party" and (3) the trial court, on its own motion, "may order the joinder of" the other spouse if the failure to join "may result in an injustice to that spouse."
It is clear to us that La.C.C.P. art. 735, as it existed when Reynolds filed its suit, obtained its judgment, and when the judgment became final, required that only the husband be named as a party defendant to reduce Reynolds' claim to judgment. The sheriff seized the property pursuant to a writ of fieri facias issued on December 13, 1979 and took "actual physical possession" of the property and appointed Dr. Magee as "custodian during the term of this foreclosure."
There were no bids at the sheriff's sale held on February 20, 1980, the sale to have been "with appraisement," so the sheriff re-offered the property for sale "for whatever it will bring, but not less than the amount of costs," placing the required legal advertisements, at the April 2, 1980 sheriff's sale. H. Mitchell Stockmann purchased the property at the April 2, 1980 sheriff's sale for $49,000.
Mrs. Magee's assertion that she was denied due process of law, her first assignment of error, is without merit.

PUBLIC RECORDS DOCTRINE
Mrs. Magee attempts to void the sheriff's sale, and the subsequent sale to the Igleharts, on the basis that the sale of property belonging to another is contrary to Louisiana codal law and jurisprudence. In particular, she cites La.C.C. art. 2452, Justice Hawthorne's dissenting opinion in Humphreys v. Royal, 215 La. 567, 41 So.2d 220 (1949), and Judge Ayres' dissenting opinion in Gregory v. Womack, 300 So.2d 213 (La.App. 2d Cir.1974), writ refused, 302 So.2d 622 (La.1974).
Appellee River City Federal, argues that Kirchberg "did not address the question of legal mortgages," it "involved a conventional mortgage, and for this reason is distinguishable from the case at bar," and Dr. Magee's "actions resulted in a legal mortgage, which, ..., was unilaterally binding *328 [on] the community in the absence of public notice of the separation." Thus, River City Federal contends that by "applying the strength of the Public Records Doctrine to the events ... in question, ..., clear and merchantable title existed as to each party," the Stockmanns, the Igleharts and River City Federal. River City Federal cites, inter alia, La.C.C. arts. 2265 and 2266, La. R.S. 9:2721 and 13:3541, Humphreys v. Royal, supra, Gregory v. Womack, supra, and Shapiro v. Bryan, 132 So.2d 97 (La. App. 4th Cir.1961) in support of its contentions.
Appellee Reynolds' contentions and citations to authorities parallel those of River City Federal. Appellees Iglehart cite Judice-Henry-May Agency, Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir.1980), writ refused, 381 So.2d 508 (La.1980) for its detailed treatment of the Public Records Doctrine.
We note at the outset that La.C.C. arts. 2265 and 2266, in effect when the facts of this litigation arose, have been redesignated as La.R.S. 9:2755 and 2756, effective January 1, 1985, by Act 331 of 1984.
In Judice-Henry-May Agency, Inc., supra, this court, per Edwards, J., after quoting La.C.C. art. 2266, as it then existed, and La.R.S. 9:2721, made the following observations:
Jurisprudence to the effect that unrecorded acts will have no legal effect on a third person, even where the third person has actual knowledge of the unrecorded acts, is of long standing.
. . . . . .
Thus, third persons need look only to the public records to determine adverse claims.... All persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property....
376 So.2d at 992.
Gregory v. Womack, 300 So.2d 213 (La. App. 2d Cir.1974), writ refused, 302 So.2d 622 (La.1974) applied the rationale and holding of Humphreys v. Royal, supra, in ruling that a purchaser at a sheriff's sale was entitled to rely on the public records and prevail against the divorced wife of the mortgagor who recited in a conventional mortgage executed in 1970 that he was married to and living with plaintiff when, in fact, his wife had obtained a judgment of divorce in Texas in 1965. The real estate had been acquired during the existence of the community of acquets and gains. The judgment of divorce was not recorded in the mortgage records of the parish where the immovable was situated. In upholding the lower court's dismissal of the former wife's suit against the former husband, the sheriff's vendee, Womack, and Womack's vendees, the majority opinion reasoned, in part, as follows:
The plaintiff in this instance procured the divorce and had ample protection of her rights in the property had she complied with the Louisiana laws relating to registry. No discrimination because of sex can be shown under these circumstances.
300 So.2d at 215.
In Humphreys v. Royal, supra, the Supreme Court of Louisiana, per Fournet, J., reversed the lower court's judgment in favor of the purchaser of the divorced wife's undivided one-half interest in immovables acquired by the husband during the marriage but which act of acquisition recited that he was "a single man." When he acquired the property Isiah Payne and his wife, Gertrude Fields, had been separated in fact about eighteen years. During 1938, Payne instituted suit for divorce against his wife, an absentee and a resident of Mississippi, and on December 2, 1938 he was granted the judgment of divorce. The divorce judgment, however, was never recorded in the Conveyance Office of the parish where the immovable was located. On November 10, 1941, Isiah Payne sold the entirety of the immovable to defendant Royal and recited in the authentic act for the assumption of the Federal Land Bank mortgage that he was a single man. In holding in favor of Isiah Payne's vendee, Royal, the court reasoned, in part, that:

*329 Under our Civil law system, the property... acquired by Payne during the existence of his marriage to Gertrude Fields Payne, belongs to the community of acquets and gains that existed between them at the time it was acquired, of which community Payne was the head and master and, as such, vested with the exclusive right to sell or otherwise alienate it. Articles 2399, 2402, and 2404 of the Revised Civil Code. This right, however, terminated upon the dissolution of the marriage when Payne divorced his wife and she was, thereafter, vested with an unrestricted title to an undivided half interest in the property. Article 2406. The only question that is to be determined, therefore, is whether the wife or her transferee here can prevail in this case in view of the public policy of this state that in order to affect third parties all sales of, transactions, or judgments touching upon or affecting real rights or immovable property must be recorded.
The public policy is based upon Revised Civil Code of 1870 ... Article 2264. The same rule applies to all sales made by sheriffs or other officers by virtue of any execution or other order of court, to all marriage contracts and all final judgments affecting real property. Articles 2265 and 2266.... [C]ontracts, sales, and judgments not so recorded are "utterly null and void, except between the parties thereto," ...
These articles are clear and free from any ambiguity and are subject to no exceptions other than that they do not apply "between the parties thereto." It therefore follows that the unrecorded divorce judgment affecting the immovable property in controversy is utterly null and void as to the defendant here, a third party.
41 So.2d at 222. (Emphasis by the Supreme Court.)
River City Federal cites official comment (a) to presently worded La.C.C. art. 2347, which replaced Article 2404 effective January 1, 1980, as additional authority for its contention that the sale of the whole of the Magee property at sheriff's sale protects the sheriff's vendee and subsequent vendees and mortgagees relying on the public records. That comment states as follows:
Encumbrances imposed by law are not subject to the requirement of the concurrence of the spouses. Thus, a tranaction by one of the spouses acting alone may give rise to a vendor's privilege, or a mechanics' or materialman's lien on community property. Likewise, the recordation of a judgment against a spouse gives rise to a judicial mortgage on community property situated in the parish in which recordation takes place.

We agree with the positions advanced by Reynolds and River City Federal and hold that the unrecorded judgment of separation, "affecting the immovable property in controversy is utterly null and void as to" the Stockmanns, the Igleharts, Reynolds, and River City Federal, all third parties within the intendment of La.R.S. 9:2755 and 2756 (formerly La.C.C. arts. 2265 and 2266, as they existed when the litigation arose). Accordingly, we hold that Mrs. Magee's second assignment of error has no merit.
Mrs. Magee's claim against Dr. Magee has not been tried on the merits and has not been disposed of by motion for summary judgment. Dr. Magee made a general appearance in the suit by filing an answer in which he denied some of Mrs. Magee's allegations, "for lack of information sufficient to justify belief," and admitted some allegations. She is certainly entitled to her day in court to prosecute her claim against Dr. Magee for any losses she sustained as a result of his allowing the execution of a judgment of less than $2,000 against property which was purchased for $85,000 by the Igleharts a few weeks after the sheriff sold it to the Stockmanns for $49,000.
We affirm the judgment of the trial court, granting the motions for summary judgment filed on behalf of defendant River City Federal Savings and Loan Association, and third party defendants, H. Mitchell *330 Stockmann and Linda Rushing Stockmann, and third party defendant Reynolds Roofing Company, Inc. "dismissing the plaintiff's and third party plaintiffs suit against them at their costs." Because Mrs. Magee's claim against Dr. Magee has not been tried we remand the case for further proceedings not inconsistent with the views herein expressed. La.C.C.P. art. 2164. Plaintiff-appellant is cast for appellate costs.
AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.