502 So.2d 568 (1987)
Doris Lancaster MAGEE
v.
Honorable J. Al AMISS, Sheriff, East Baton Rouge Parish, Louisiana, et al.
No. 86-C-1610.
Supreme Court of Louisiana.
February 23, 1987.
Rehearing Denied March 25, 1987.
Roger M. Fritchie, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for applicant.
Gerard E. Kiefer, Forrest & Kiefer, James H. Morgan, III, Seale, Smith & Phelps, Dennis A. Pennington, Spedale, Sanders & Pennington, Michael R. Connelly, Douglas L. Nicholson, Baton Rouge, for respondents.
WATSON, Justice.
A separated wife, Doris Lancaster Magee, seeks recognition of or recompense for her undivided one-half interest in a community home, which was sold at a sheriff's sale, without notice to her, because of a $1,856 judgment in satisfaction of a roofing lien.

FACTS
On September 1, 1970, lot forty-three, East Broadmoor Subdivision, Parish of East Baton Rouge,[1] was purchased by Archibald *569 Carter Magee, Sr., for $33,500 from Mary B. and John D. Sutherland. The Act of Sale recites that the purchaser was "married to and living with Doris L. Magee, born Lancaster, domiciled in the Parish of East Baton Rouge".[2] Subsequently, on July 9, 1971, Doris Lancaster Magee received a judgment of separation in East Baton Rouge Parish, and the parties were enjoined against alienating any property pending a settlement of the community. The judgment of separation was not recorded in the mortgage records until April 30, 1980, after the sheriff's sale. No notice of lis pendens, judgment of divorce, or community property settlement was ever recorded.
On September 14, 1979, Reynolds Roofing Company, Inc., received a $1,856 judgment to satisfy a lien on the Magee property; a writ of fieri facias issued; and lot forty-three of East Broadmoor Subdivision was seized. Archibald Magee was appointed custodian of the property. When first offered for sale with appraisal, there were no bids on the property. On April 2, 1980, it sold at public auction to H. Mitchell Stockmann for $49,000. After the first mortgage balance of $14,381.18, the Reynolds' judgment and expenses were paid, the sheriff transferred the net proceeds of $30,646.76 to Dr. Magee.
The recorded proces-verbal of the sheriff's sale recites that the certificate of mortgages recorded against the property included none in the names of Archibald C. Magee, Doris L. Magee, John D. Sutherland, and Mary B. Sutherland, except those relating to the Magee purchase and the Reynolds' lien.
On October 16, 1980, lot forty-three was sold by Stockmann and his wife to Don Alan and Connie Summers Iglehart for $85,000, and the Igleharts mortgaged the property to River City Federal Savings and Loan Corporation for $68,000.
Doris Magee filed suit, naming as defendants: Sheriff Amiss of East Baton Rouge Parish; Don Alan and Connie Summers Iglehart; River City Federal Savings and Loan Corporation; and Archibald Magee, alleged to be a nonresident. She asked that the sheriff's sale be declared a nullity insofar as it purported to convey her undivided one-half interest in the property to Stockmann and that the Stockmanns' sale to the Igleharts also be annulled. Alternatively, she asked judgment against Archibald C. Magee for one-half of the proceeds from the sheriff's sale. Cited as garnishee was the American Bank & Trust Company at Baton Rouge, which allegedly holds assets belonging to Archibald Magee.
The Igleharts filed a third party demand against Sheriff Amiss, the Stockmanns, and Reynolds. In answer, the Stockmanns alleged the existence of a counter letter nullifying their liability as vendors; contended that the sale to the Igleharts was "substantially"[3] below the property's appraised or market value because of "potential litigation,"[4] and pleaded discussion against the Igleharts' title insurer and examiner. The Stockmanns third partied Archibald Magee and Reynolds.
*570 Rejecting Doris Magee's claim that she had been denied due process under the state and federal constitutions, the trial court granted summary judgment and dismissed Doris Magee's suit against the sheriff. The summary judgment in favor of the sheriff is now final. Summary judgment was also granted in favor of defendant, River City, and third party defendants, Reynolds and the Stockmanns.[5]
The court of appeal[6] found that Reynolds had properly filed suit against Archibald Magee as head and master of the community under LSA-C.C.P. art. 735[7] which then provided that the husband is the proper defendant in an action to enforce an obligation against the community; that the sheriff correctly sold the property to satisfy the judicial mortgage created by the Reynolds' judgment; and that the unrecorded judgment of separation had no effect as to Reynolds, the Stockmanns, the Igleharts, and River City, who were third parties protected by the public records doctrine. The court of appeal affirmed the summary judgment in favor of River City, the Stockmanns, and Reynolds and remanded for further proceedings as to Doris Magee's claim against Archibald Magee. A writ was granted to review the judgment of the court of appeal.[8]

LEGAL ANALYSIS
LSA-C.C. art. 2404[9] formerly allowed the husband, as head and master of the community, to alienate its assets by an onerous title without his wife's consent. Article 2404 was repealed. As of January 1, 1980, LSA-C.C. art. 2347[10] requires the concurrence of both spouses for the alienation, encumbrance or lease of community immovables. Although a lien would appear to be an encumbrance, the Comments under Article 2347 note, in pertinent part:
"(a) Encumbrances imposed by law are not subject to the requirement of concurrence by the spouses. Thus, a transaction by one of the spouses acting alone may give rise to a vendor's privilege, or a mechanic's or materialman's lien on community property. Likewise, the recordation of a judgment against a spouse gives rise to a judicial mortgage on community property situated in the parish in which recordation takes place. * * *"
LSA-C.C. art. 2404 was declared unconstitutional as a denial of equal protection under the Fourteenth Amendment in *571 Kirchberg v. Feenstra, 609 F.2d 727 (5 Cir., 1979), affirmed on March 23, 1981, at 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981). The Fifth Circuit opinion was not retroactive, but it was rendered on December 12, 1979, prior to the sheriff's sale. However, Kirchberg involved a conventional mortgage, not a judicial mortgage. Kirchberg recognized a cause of action against the State of Louisiana by a plaintiff wife.[11]
In distributing the proceeds of this sale, the sheriff acted according to LSA-C.C.P. art. 2373 by paying debtor Magee the surplus.[12] However, the property had been acquired by Archibald Carter Magee, Sr., while married to and living with Doris Lancaster Magee, from John D. and Mary B. Sutherland.[13] The certificate of mortgages incorporated in the sheriff's recorded proces-verbal noted no mortgages against the property in the names of Archibald C. Magee, Doris L. Magee, John D. Sutherland or Mary B. Sutherland.[14] The certificate of mortgages and the recorded deed revealed Doris L. Magee's interest in the seized property. Compare Long v. Chailan, 196 La. 380, 199 So. 222 (1941), where the husband's marital status was not apparent in his deed to the land. Here, the public records did not show that Doris Magee's interest had been alienated. The judgment of separation had not been recorded, and no divorce or property settlement of the community had been recorded. As to third parties, the community remained intact.
However, the provisions of Civil Code Article 2347, effective January 1, 1980, specifically prohibited alienation of Mrs. Magee's interest without her concurrence. Since the judicial sale, an alienation, took place after Article 2347 was effective, she was entitled at a minimum to notice; the failure to notify voided the sale as to her interest.
One with a legally protected property interest, such as Doris Magee, is entitled to notice of the property's pending sale. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, ... if its name and address are reasonably ascertainable." Mennonite Bd. of Missions v. Adams, 462 U.S. 791 at 800, 103 S.Ct. 2706 at 2712, 77 L.Ed.2d 180 at 188 (1983). Mennonite involved lack of notice, except by publication, to a mortgagee. As a result, Mennonite held that the purchaser of the property could not quiet his title.
The legal regime of community property between the Magees terminated with their separation from bed and board.[15] The debt *572 to Reynolds Roofing was a separate obligation incurred after termination of the community property regime. While the house was still owned in indivision by the Magees, Dr. Magee apparently had sole use and occupancy of the residence from 1971 until he had it reroofed in 1978. When this debt to Reynolds was incurred, a community debt would have been unlawful under LSA-C.C. art. 150, which provided:
"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."[16]
In Otis v. Texas Co., 153 La. 384, 96 So. 1 (1923) it was held that plaintiffs were on notice of facts sufficient to elicit inquiry as to their vendor's title. Therefore, plaintiffs were not innocent third persons purchasing in good faith and acquired only that title owned by their vendor. Breaux-Renoudet Cypress-Lumber Co. v. Shadel, 52 La.Ann. 2094, 28 So. 292 (1900) and Succession of Rogge, 49 La.Ann. 37, 21 So. 170 (1897).
LSA-C.C. art. 2620, "Rights acquired at execution sale" states:
"This sale on execution transfers the property of the thing to the purchaser as completely as if the owner had sold it himself; but it transfers only the rights of the debtor such as they are."

CONCLUSION
Since the judgment of separation had not been recorded, Reynolds acted legally in filing suit only against Archibald Magee. The record does not reveal why Dr. Magee would allow a valuable piece of community property to be sold in satisfaction of a small separate debt; the facts suggest that he was attempting to liquidate his and his former wife's interests in the property without her sharing in the proceeds. See LSA-C.C. art. 150, supra.
On April 21, 1980, when lot forty-three was sold at sheriff's sale, the interest of Doris Magee in the property seized and sold at auction was apparent on the face of the public records, appearing in the recorded deed to which attention was directed by the certificate of mortgages. Alienation of the property without her consent required some notice to her apart from mere publication and advertisement of the sale. LSA-C.C. art. 2347. Her due process rights were violated by the lack of notice. A co-owner like Doris Magee would be entitled to at least the minimum protection recognized in Mennonite. The purchaser here could not acquire good title to her interest in the property.[17]
Both sets of purchasers, the Stockmanns and the Igleharts, were aware from the certificate of mortgages that Doris Magee had an undivided one-half interest in the property. For this reason, the Stockmanns acquired the property for only $49,000. As the Stockmanns judicially admitted in their pleadings, even the subsequent sale to the Igleharts for $85,000 represented "substantially" less than the property's appraised or market value. The Stockmanns also judicially admitted that the property they purchased was prone to "potential litigation".
The issue is whether the Stockmanns and the Igleharts acquired the entire property under these circumstances.
The Stockmanns were not good faith purchasers and acquired only the undivided one-half interest in the property owned by Archibald Magee. LSA-C.C. art. 2620; Otis v. Texas Co., supra. When the Igleharts acquired the property from the Stockmanns on October 16, 1980, the Igleharts had further notice that their title *573 was defective because the Magee judgment of separation had been recorded in East Baton Rouge Parish on April 30,1980. Under these circumstances, neither the Stockmanns nor the Igleharts can claim to be good faith purchasers of the entire property. What they acquired was what was owned by the judgment debtor, Archibald Magee, an undivided one-half interest in lot forty-three. LSA-C.C. art. 2620.
Neither the Stockmanns nor their successors were good faith purchasers of the entire property and they acquired only Archibald Magee's undivided one-half interest. Doris Magee, therefore, retains an undivided one-half interest in lot fortythree of East Broadmoor Subdivision in the Parish of East Baton Rouge.
The summary judgment in favor of Reynolds Roofing Company, Inc., is affirmed. The summary judgment in favor of River City Federal Savings and Loan Corporation, H. Mitchell Stockmann and Linda Rushing Stockmann is reversed, and the matter is remanded for trial of the demands against the Igleharts, River City and Archibald Magee, as well as the third party demands involving the Stockmanns, the Igleharts, Archibald Magee, and the Igleharts' title insurer and examiner.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
Even though the judgment of separation was never recorded, and the community remained intact as to third parties, the deed made it clear that the wife had an ownership interest in the property as a co-partner in community with Mr. Magee. She was thus entitled to receive notice of the judicial sale. Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and Bonner v. B-W Utilities, 452 F.Supp. 1295 (W.D.La.1978). The lack of notice invalidated the sale at least as to the wife's interest. The good or bad faith of the purchasers at the judicial sale was irrelevant.
NOTES
[1] "A certain lot or parcel of ground, together with all of the buildings and improvements thereon, situated in the Parish of East Baton Rouge, State of Louisiana, in that subdivision known as EAST BROADMOOR, and designated on the official plan of said subdivision prepared by Mundinger, Dupree & Cooper, Civil Engineers and Surveyors, dated June 30, 1952, entitled `Final Plat, East Broadmoor, First Filing, located in Section 85, T-7-S, R-1-E, Greensburg Land District of Louisiana,' a blueprint of which is on file and of record as Original number 91 of bundle number 3042 of the office of the Clerk and Recorder for the said parish and state, as LOT NUMBER FORTY-THREE (43) of said East Broadmoor; said lot measuring one hundred (100') feet front on the north side of Woodbine Drive by a depth between parallel lines of one hundred seventy-two (172') feet; said lot being subject to a five (5') foot servitude off the rear thereof as shown on said map.

"Said property is sold, conveyed, and accepted subject to any and all valid restrictions and/or servitudes of record affecting same.
"This is the exact same property acquired by John D. Sutherland and Mary B. Sutherland by act of record in original 19, bundle 5050, official records of the Parish of East Baton Rouge, State of Louisiana." [Exhibit 1, Tr. 93]
[2] Record, p 93.
[3] Record, p 40.
[4] Record, p. 40.
[5] Contrary to the Court of Appeal opinion [See 490 So.2d 322 at 323], the trial court's judgment of January 3, 1985, did not dismiss Doris Magee's suit against the Igleharts.
[6] Magee v. Amiss, 490 So.2d 322 (La.App. 1 Cir., 1986).
[7] LSA-C.C.P. art. 735 then provided:

"The husband is the proper defendant in an action to enforce an obligation against the marital community.
"When doubt exists whether the obligation sought to be enforced is that of the marital community or of the separate estate of the wife, the husband and wife may be sued in the alternative."
[8] 496 So.2d 316 (La., 1986).
[9] LSA-C.C. art. 2404 provided:

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
"He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.
"Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.
"But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud."
[10] LSA-C.C. art. 2347 provides:

"The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, all or substantially all of the assets of a community enterprise and movables issued or registered as provided by law in the names of the spouses jointly."
[11] Even prior to the repeal of LSA-C.C. art. 2404 and Kirchberg, it was contended that protection of community interests should prevail over the law of registry. "[I]t is the duty of a person who deals with a purchaser of immovable property to find out whether he or she was married or single at the date of such purchase." Hawthorne, J., dissenting in Humphreys v. Royal, 215 La. 567, 41 So.2d 220 at 223 (1949) in reliance on Succession of James, 147 La. 944, 86 So. 403 (1920).
[12] LSA-C.C.P. art. 2373 provides:

"After deducting the costs, the sheriff shall first pay the amount due the seizing creditor, then the inferior mortgages, liens, and privileges on the property sold, and shall pay to the debtor whatever surplus may remain."
[13] The Sutherlands retained a vendors' lien and Magee assumed the balance on a $26,800 promissory note to the Capital Building & Loan Association.
[14] The only exceptions were the Capital note, the Sutherlands' lien, and the Reynolds' suit.
[15] LSA-C.C. art. 155 then provided:

"The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation."
[16] Repealed by Act No. 709 of 1979, § 2, effective January 1, 1980.
[17] Although the judgment in favor of the sheriff is now final, the Stockmanns also had notice of her ownership.