572 So.2d 1085 (1990)
Albert STEWART, Jr.
v.
Gloria M. WILLIAMS.
No. CA 89 1167.
Court of Appeal of Louisiana, First Circuit.
December 18, 1990.
Michael E. Theriot, Baton Rouge, for plaintiff-appellant Albert Stewart, Jr.
Wilbur D. Atkins, Baton Rouge, for defendant-appellee Gloria M. Williams.
Before COVINGTON, C.J., LANIER J., and LEMMON[*], J. Pro Tem.
LANIER, Judge.
This suit commenced as a possessory action by the owner of record of a subdivision lot against his sister, who was in possession of the property. The sister-possessor answered the suit and converted it into a petitory action by alleging and seeking recognition of her purported undivided three-fourths interest in the property. To dereign her title, the sister-possessor, among other things, collaterally attacked the validity of a sheriff's sale in the owner-brother's chain of title, but she did not make the purchaser at the sheriff's sale or the vendor-mortgagee of the owner-brother parties to this suit. The trial court noted that "[N]either Financial Corporation nor A Second Mortgage Company of Baton Rouge, Inc. have been made parties herein therefore this Court is without jurisdiction to render a judgment affecting them", and held that "as between the parties hereto the Court finds that the foreclosure by Financial Corporation is absolutely null and without effect." The trial court rendered a judgment stating that the sheriff's sale was "absolutely null as between the parties herein" and ordered that "any succession, partition suit, or other action between the parties or other heirs, or defendants must be filed in a new suit and may not use this suit number as this is a final judgment." The owner-brother took this devolutive appeal.

FACTS
On June 30, 1952, Joe Chaney, Jr. and Gladys Robinson Chaney sold Lot 20 of Square 164 of Suburb South Baton Rouge *1086 (the property) to Albert Stewart for $5,500. The act of sale (with mortgage) states that Stewart declared he was a bachelor. This property now bears the address of 1136 West Roosevelt Street.
Albert Stewart was the father of four children, namely: (1) Albert Stewart, Jr., (2) George Stewart, (3) Annie Mae Stewart Sampson, and (4) Gloria Mae Stewart Williams.[1]
At some point in time not revealed by the record, Albert Stewart married Ruth Davis.[2] On July 29, 1970, Albert Stewart obtained a judgment of divorce from Ruth Davis. The record does not reflect if this judgment was recorded in the mortgage records.
On October 31, 1972, A Second Mortgage Company of Baton Rouge, Inc. (A Second) as seller and mortgagee, and Albert Stewart, as buyer and mortgagor, executed a sale and mortgage (contract) for the property. The record does not contain documentary evidence showing how ownership of the property got from Stewart to A Second. This contract recites that Albert Stewart is "married to and living with Ruth Davis". The sale price and the amount of the mortgage was $7,000. The contract provided for executory process, contained a confession of judgment and warranted title. However, the contract also provided that "[N]o title examination has been requested of and none made by the undersigned notary public, who has been provided with the description of the property by the parties."
Albert Stewart died on July 6, 1973. No succession proceedings were instituted for his estate.
On March 20, 1975, Financial Corporation (Financial) filed a suit for executory process against the property. The petition is entitled "FINANCIAL CORPORATION V. RUTH DAVIS STEWART, SURVIVING SPOUSE IN COMMUNITY WITH ALBERT STEWART, DECEASED" and asserts that Financial is the holder and owner of the promissory note executed by Albert Stewart when he executed the contract. Paragraphs 9 and 10 of the petition state the following:
9.
Albert Stewart executed said act of sale with mortgage on October 31, 1972 at a time when he was married to and living with his wife, defendant Ruth Davis, resident of lawful age of East Baton Rouge Parish, who is his surviving spouse, decedent Albert Stewart having departed this life July 6, 1973.
10.
Pursuant to Article 2671 of Louisiana Code of Civil Procedure, since the mortgage and vendor's privilege was granted by decedent on community property to secure an obligation of the community, this executory proceeding to enforce the mortgage and privilege is being brought against the surviving spouse in community. It is not necessary to make any succession representative, heir or legatee of decedent a party to the proceeding.
The sheriff's return in this suit states that he "received the within Writ on the 23rd day of June, 1975, and ... seized the ... property and appointed Gloria Williams as Custodian of same, and on the 5th day of February, 1976, notice of seizure was served on the defendant within named." On March 17, 1976, the sheriff sold the property with appraisal to Financial at public auction for $4,166.68.
On October 29, 1976, A Second, as seller and mortgagee, and Albert Stewart, Jr., as buyer and mortgagor, executed a sale and mortgage for the property. The record does not contain documentary evidence to show how title to the property got from *1087 Financial to A Second. The purchase price of the property was $7,000, and $6,800 of the purchase price was financed. A Second delivered the property to Albert Stewart, Jr. "with full warranty of title, and with subrogation to all rights and actions of warranty" that it had. However, this instrument provided that "[N]o title examination has been made and none requested of by the undersigned notary public, who has been provided with the description of the property by the parties."
On March 5, 1984, George Stewart donated his undivided one-fourth (¼) interest in the property to Gloria Stewart Williams. On May 11, 1984, Annie Stewart Sampson donated her undivided one-fourth (¼) interest in the property to Gloria Stewart Williams.
This suit was filed on June 21, 1984.

FAILURE TO JOIN INDISPENSABLE PARTIES
The trial court judge gave, in pertinent part, the following reasons for judgment:
It is undisputed that Albert Stewart, Sr. purchased this property as a bachelor. Albert Stewart, Sr. died July 6, 1973 leaving four children. The subject property was his separate property.
Financial Corporation instituted its foreclosure action against and served Ruth Davis Stewart, Surviving Spouse in Community with Albert Stewart, deceased. Ruth Davis Stewart had no ownership interest at all in the subject property.
By way of "Post-Trial Memorandum," Albert Stewart, Jr. alleges that LSA-C. C.P. Article 2003 operates to make the error as to party a relative nullity because Gloria Williams was served as "keeper" of the property and thereby acquiesced in the sale. This Court, however, finds that a judgment against a deceased person is an absolute nullity. In Simoneaux v. Sun Erection Co., 531 So.2d 1136 (4th Cir., 1988), at pg. 1137, citing a well-established line of cases, the Court held:
For it is well settled that a judgment for or against a deceased person is an absolute nullity. Any interested party may have declared null a judgment against a deceased person.
LSA-C.C.P. Article 862 states that a final judgment shall grant any relief to which a party is entitled, even if the party has not demanded such relief in his pleadings. Financial Corporation failed to require a simple title examination which would have readily revealed that this property was separate property. Neither Financial Corporation nor A Second Mortgage Company of Baton Rouge, Inc. have been made parties herein therefore this Court is without jurisdiction to render a judgment affecting them. However, as between the parties hereto the Court finds that the foreclosure by Financial Corporation is absolutely null and without effect.
Because we conclude that there was a failure to join two indispensable parties in the trial court, it is unnecessary to address the merits of this rationale.[3]
*1088 The law applicable to indispensable parties is set forth in Terra Development Corporation v. Southland Dragway, Inc., 442 So.2d 587, 588-589 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1225 (La.1984) as follows:
An indispensable party to an action is one whose interest in the subject matter is so interrelated that a complete and equitable adjudication of the controversy cannot be made unless he is joined in the action. La.C.C.P. art. 641. A party is deemed indispensable only when that result is absolutely necessary to protect substantial rights. State, Department of Highways v. Lamar Advertising Company of Louisiana, Inc., 279 So.2d 671 (La.1973). The failure to join an indispensable party may be noticed by an appellate court on its own motion. La.C. C.P. arts. 645 and 927.
. . . . .
Since La.C.C.P. art. 641 provides that no adjudication of an action can be made unless all indispensable parties are joined therein, the appropriate action to be taken when an appellate court notices the absence of an indispensable party is to remand the case to the trial court for the joinder of the indispensable party and a retrial of the case.
To establish her ownership in the property, Gloria Stewart Williams has attacked the validity of the 1976 judicial sale which purported to convey the ownership of the property from the heirs and/or the surviving spouse in community of Albert Stewart to Financial. A sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to obtain ownership of the thing. La.C.C. art. 2439. Obviously, the rights and obligations of a seller cannot be annulled without affecting the rights and obligations of a buyer (such as Financial). Thus, it has been held that in an action to annul a sale, the seller and buyer are indispensable parties. Sharp v. Sharp, 227 La. 9, 78 So.2d 491 (1955); Dambre v. Fair, 376 So.2d 626 (La.App. 4th Cir.1979). This rule applies to judicial sales under executory process. Smith v. Brady, 37 La.Ann. 122 (1885). The trial court committed error by not requiring that Financial be made a party defendant to the petitory action of Gloria Stewart Williams. Further, the attack on the 1976 sheriff's sale under executory process, if successful, will directly affect the vendor's lien and mortgage obtained by A Second from Albert Stewart, Jr.[4] A *1089 Second is also an indispensable party to these proceedings. Dambre v. Fair, 376 So.2d at 628.

DECREE
For the foregoing reasons, on our own motion we notice and sustain a peremptory exception raising the objection of failure to join indispensable parties. The judgment of the trial court is reversed and this case is remanded to the trial court for the purpose of joining Financial and A Second as indispensable parties to these proceedings and for a retrial of the case. The cost of this appeal is to be divided equally between the appellant and the appellee.
REVERSED AND REMANDED.
NOTES
[*] Judge Mary Ann Vial Lemmon of the 29th Judicial District Court is serving as Judge pro tempore by special appointment of the Louisiana Suspreme Court to fill the vacancy created by the death of Judge Steve A. Alford, Jr.
[1] The evidence of record does not reflect the name of the mother of these children or the dates of birth of the children. The record does not reflect the marital status of Mr. Stewart and the mother of these children.
[2] The record reflects that Ruth Davis was not the mother of Albert Stewart, Jr. or Gloria Mae Stewart Williams; the record does not reflect whether Ruth Davis was, or was not, the mother of George Stewart or Annie Mae Stewart Sampson. The record also reflects that the mother of Albert Stewart, Jr. and Gloria Mae Stewart Williams died on September 26, 1970.
[3] We direct the trial court's attention to the following authorities and deficiencies in the record in an effort to avoid further error in this case on remand.

Whether the property was community property or the separate property of Albert Stewart when the contract was signed on October 31, 1972, is unclear in the record presently before us. There is a break in the chain-of-title of the property between the sale in which Albert Stewart acquired the property as a single man in 1952 and the sale and mortgage in which he reacquired the property purportedly as a married man in 1972. Thus, the possibility exists that there may have been interim conveyances involving the property that converted it into community property. Further, the record does not show that the 1970 judgment of divorce was recorded in the mortgage records. A failure to record this judgment may, or may not, affect the rights of third persons (such as Financial and A Second). See, for example, Magee v. Amiss, 502 So.2d 568 (La.1987). Finally, the fact that the 1972 sale and mortgage between A Second and Albert Stewart may have had an erroneous statement of his marital status could also affect the substantive rights of persons who subsequently purchased the property (such as Financial and Albert Stewart, Jr.). See, for example, Camel v. Waller, 526 So.2d 1086 (La. 1988).
It is questionable whether the sheriff's sale via executory process to Financial was rendered invalid by the death of Albert Stewart, as indicated by the trial judge. The executory proceeding was based on a confession of judgment signed by Albert Stewart while he was alive. La.C.C.P. art. 2632. The fact of death does not affect the validity of an otherwise properly executed confession of judgment; it merely affects against whom the executory process will proceed. La.C.C.P. arts. 2671-2675. As hereinafter indicated, there is a distinction between a final judgment, La.C.C.P. art. 1841, and a confession of judgment. We would agree that a final judgment can not be validly rendered against a dead person.
Albert Stewart, Jr. asserted in the trial court that Gloria Stewart Williams acquiesced in the 1976 sheriff's sale under executory process, citing La.C.C.P. art. 2003. La.C.C.P. art. 2003 is found in La.C.C.P. art. 2001 et seq. which provides for the action for nullity of final judgments. Executory process pursuant to a confession of judgment is an ex parte and in rem proceeding designed to seize and sell the property of the debtor and distribute the proceeds of the sale. Chrysler First Financial Services Corp. v. ZIA Corporation, 542 So.2d 87 (La.App. 1st Cir.1989). As such, the substantive and procedural defenses against it are limited. La.C.C.P. art. 2642; La.R.S. 13:4112; Buckner v. Carmack, 272 So.2d 326 (La.1973). An executory proceeding is not an adversary or an ordinary proceeding, and it does not result in a final judgment. Thus, an action for nullity of a final judgment pursuant to La.C.C.P. art. 2001 et seq. may not be used to contest the validity of an executory proceeding. Paciera v. Augustine, 518 So.2d 1164 (La.App. 5th Cir.), writ denied, 522 So.2d 1095 (La.1988).
[4] Attached to the appellee's brief is a copy of an agreement to purchase the property dated September 12, 1975, between Financial and Albert Stewart, Jr. This document was not filed in evidence at the trial, is not part of the record before us, and can not be considered by us. Capital Drilling Company v. Graves, 496 So.2d 487 (La.App. 1st Cir.1986). In the record before us there is a gap in the chain-of-title between the acquisition of the property by Financial at the sheriff's sale and the sale and mortgage by A Second to Albert Stewart, Jr. If A Second acquired the property with warranty of title, it may have a call in warranty (third party demand) against its vendor.