IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-4796

_____

USX CORP., ET AL.,

                                        Plaintiffs-Appellees,

versus

H. H. CHAMPLIN, ET AL.,

                                        Defendants-Appellants.
                 ******************************

GLADSTONE DEVELOPMENT CORP.,

                                        Plaintiff-Appellant,

versus

USX FINANCIAL CORP., A Division
of USX CORP.,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Western District of Louisiana

_____

(May 31, 1993)

Before WISDOM,[*] GARWOOD, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This appeal comes from the trial of two cases consolidated for trial. The first case was a suit for declaratory judgment by USX Corporation against H.H. Champlin and the FDIC to declare Champlin's remedy as the holder of a second mortgage extinguished when USX foreclosed its first mortgage without giving Champlin

_____

[*]Because of illness, Judge John Minor Wisdom was not present at the oral argument of this case; however, having had available the tape of oral argument, he participated in this decision.

notice. Champlin had not requested notice under a Louisiana statutory procedure nor contracted for notice in subordinating his mortgage to the first position of USX. The second is a suit by Gladstone Development Corporation against USX for specific performance of a contract for the sale of the property USX acquired in the foreclosure sale. The district court ruled that the foreclosure sale was constitutionally deficient, did not extinguish the mortgages, and ordered a resale by private auction. The court denied Gladstone's claim for specific performance. We affirm.

## I.

In 1985, H.H. Champlin obtained a mortgage on the Tiffany Plaza Shopping Center located in Vermilion Parish, Louisiana, to secure a debt of $959,712.85. Champlin later assigned the debt due him to Republic Bank in Oklahoma City to secure his debt to the Bank.[1] In December 1986, Paramount Investment Properties, Ltd. purchased the Shopping Center and refinanced its debt. As part of the refinancing transaction, USX and Landmark Savings Bank acquired a $3.8 million mortgage on the Shopping Center, and for a fee of $50,000 Champlin agreed to subordinate his mortgage to the USX mortgage. The subordination agreement did not require USX to notify Champlin or the Republic Bank in the event of foreclosure.

Paramount did not meet its obligations under the refinancing arrangement, and in late 1988 USX started foreclosure proceedings in Louisiana state court. A foreclosure sale was held on February 22, 1989. USX gave no notice to Champlin or the FDIC of the

---

[1]The FDIC obtained the note when the bank failed in 1987.

foreclosure proceeding or the sale. The parties agree that the foreclosure complied with Louisiana law, because no notice was required in the absence of a request for notice of seizure, a request no one made. See La. R.S. 13:3886.[2]

At the time of the foreclosure sale, the balance due on the Champlin mortgage was $1,331,308. The FDIC had the Shopping Center appraised in September 1988, six months before the sale, at $2,250,000. The Shopping Center was appraised for $3,500,000 in the foreclosure proceeding, and the balance owed on the USX mortgage at that time was $4,031,936. USX successfully bid with a credit against the USX note and mortgage of $2,450,000, 70% of the appraised value.

Following the foreclosure sale, USX contracted to sell the Shopping Center to Gladstone. The contract provided for a purchase price of $3,500,000, $525,000 in cash, with $50,000 in earnest money. USX financed the balance of $2,975,000. The agreement provided for closing on June 20, 1990 unless the parties agreed otherwise.

---

[2]La. R.S. 13:3886 provides:

A. Any person desiring to be notified of the seizure of specific immovable property or of a fixture located upon specific immovable property shall file a request for notice of seizure in the mortgage records of the parish where the immovable property is located. The request for notice of seizure shall state the legal description of the immovable property, the owner of the property, and the name and address of the person desiring notice of seizure. The person requesting notice of seizure shall pay the sum of ten dollars to the sheriff.
. . .

As required by the contract, Gladstone furnished USX with a commitment of title insurance. As a prerequisite for insurance, the commitment required the cancellation of record of the Champlin mortgage and a release from Champlin. USX attempted to secure the required waiver from Mr. Champlin and the FDIC and ultimately filed this suit for a declaratory judgment to resolve the issues attending the failure to give notice.

The initial closing date was extended numerous times until July 20, 1991. The parties did not agree to any further extensions. On July 15, 1991, Gladstone notified USX that it wished to close the transaction and proposed that should USX be unable to cancel the Champlin mortgage before closing, Gladstone would accept a bond or similar indemnification to give USX additional time to do so. On July 16, 1991, USX advised Gladstone that the Champlin matter had not been resolved and would not be resolved before the July 20th closing date. USX stated that it had no obligation to clear the Champlin mortgage and that under the contract, Gladstone had the choice of either purchasing the Shopping Center subject to the Champlin mortgage or terminating the agreement. Gladstone continued to insist that USX had a duty to satisfy the mortgage and refused to take title. USX therefore concluded that the agreement was terminated and returned Gladstone's $50,000 deposit. Gladstone's suit against USX for specific performance followed.

In the consolidated trial, the district court held: (1) Champlin and FDIC's Fourteenth Amendment due process right to

4

notice was violated, (2) Champlin and FDIC were not injured because there was no equity in the property above the first mortgage, (3) both the USX mortgage and the Champlin mortgage survived the sale, and (4) the property should be resold at private auction at which USX, Champlin, and others could bid.

The court also refused to order specific performance of the USX-Gladstone contract, finding that under the agreement USX had no duty to cure the title objection, that Gladstone could have purchased the property or terminated the agreement, and that Gladstone's failure to close terminated the agreement. Champlin, FDIC, and Gladstone appealed.

## II.

We first consider Gladstone's claim for specific performance of its contract with USX. We must interpret section 2.1 of the USX-Gladstone contract:

> **Title**. Buyer at its sole expense shall, on or before May 5, 1990, furnish to Seller a commitment from Title Insurer to issue an ALTA Owner's Policy of Title Insurance (the "Commitment") and an ALTA survey relating to the Land. Buyer shall have fifteen days after its actual receipt of the Commitment to examine same and to notify Seller in writing of its objections to title due to the existence of any material items not described in Exhibit B hereto which are objectionable to Buyer. Failure of Buyer to notify Seller in writing of any such objections within such time period shall be conclusively deemed to be approved by Buyer of all items. If Buyer timely notifies Seller of any such objections, Seller shall have the right to cure or remove same to the satisfaction of the Title Insurer to enable the Title Insurer to insure at the closing good and marketable title in Buyer or its assigns to the Land subject only to easements not affecting the use of the Property as a shopping center, and subject to the purchase money mortgage described herein. Notwithstanding the foregoing, Buyer may not object to any of the items described in Exhibit B hereto after the Inspection Date. If Seller does cure or remove all such objections within fifteen days, Buyer shall be obligated to proceed with

5

closing.  <u>If Seller does not cure or remove all such objections, Buyer shall have the right to either proceed with the closing subject to such uncured objections or to terminate this Agreement.  Seller shall not be obligated to cure or remove any title objections</u>.

(emphasis added).  Under Louisiana law whether a contract is ambiguous is a question of law as is the interpretation of an unambiguous contract.  <u>Spohrer v. Spohrer</u>, 610 So.2d 849, 853 (La. Ct. App. 1992); <u>Bellina v. Graybar</u>, 532 So.2d 847, 850 (La. Ct. App. 1988).  Therefore our review is <u>de novo</u>.

Gladstone first contends that because the purchase agreement does not define "objection to title" its meaning should be implied from custom.  <u>See</u> La. Civ. Code Art. 2054.[3]  The argument continues that, generally, Louisiana law provides that a prior mortgage is not a title defect in breach of the warranty of merchantable title where the purchase price exceeds the amount of the mortgage. <u>Jaenke v. Taylor</u>, 106 So. 711 (La. 1925); <u>Tolar v. Pacific International Petroleum, Inc.</u>, 465 So. 2d 925, 928 (La. Ct. App. 1985).  The immediate flaw in this argument urging the court to draw upon custom is that the parties anticipated this event in their contract and there are no relevant provisions that custom need furnish.  Moreover, even if we were to resort to custom, the custom urged by Gladstone has little relevance here; section 3.2(C)

---

[3]**Art. 2054.  No provision of the parties for a particular situation**

When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.

of the contract waives all warranties, including the warranty of merchantability.

Gladstone also argues that we should look to the parties' course of performance to interpret "objection to title."  See La. Civ. Code Art. 2053.[4]  USX agreed to extend the closing deadline and filed for a declaratory judgment to resolve the problem with the Champlin mortgage.  Gladstone argues these actions support its reading that USX was obligated to cure the problem with the Champlin mortgage.  The extensions by USX were consistent with the agreement.  USX had the right to cure any objections and obligate Gladstone to purchase the Shopping Center, but the contract expressly provides that USX had no obligation to do so.  This agreement contemplated attempts by USX to cure objections.

We agree with the district court that the Champlin mortgage, raised by the title insurer in the commitment, was an "objection to title" within the meaning of section 2.1.  Because USX did not cure the objection before closing, Gladstone had the option of purchasing the Shopping Center despite the defect in title.

III.

A.

Turning to USX's suit for declaratory judgment, the district court correctly found that USX's failure to notify Champlin and the

---

[4]**Art. 2053.  Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties**

A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

FDIC violated their right not to be deprived of property without due process under the Fourteenth Amendment. In Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), the Supreme Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well-versed in commercial practice, if its name and address are reasonably ascertainable." Id. at 800. Applying this holding to the case before it, the Court concluded that due process entitles a mortgagee with a recorded mortgage to actual notice of a tax sale. In this case, there is no dispute that the Champlin mortgage was a property interest and that this interest was reasonably ascertainable from the public records.

Soon after the foreclosure sale in this case, we decided Davis Oil Co. v. Mills, 873 F.2d 774 (5th Cir. 1989), holding that a failure to request notice under La. R.S. 13:3886 is not a waiver of due process notice under Mennonite. See also Small Engine Shop, Inc. v. Cascio, 878 F.2d 883, 890 (5th Cir. 1989) (holding that La. R.S. 13:3886 does not shift the constitutional burden of notice to the party desiring to be notified). In Sterling v. Block, 953 F.2d 198 (5th Cir. 1992), we held that Davis Oil applies retroactively. Against this background it is clear that although Louisiana law did not entitle Champlin and the FDIC to notice of foreclosure, the Fourteenth Amendment did require USX to notify them.

We are not persuaded by USX's attempt to distinguish these decisions on their facts. USX refers to the fact that the Shopping

8

Center in this case sold for 70% of its appraised value at the foreclosure sale whereas the property involved in Mennonite and Sterling sold at a fraction of their fair market value. Additionally, Champlin knew of the USX mortgage, unlike the situation in Mennonite, Sterling, and Davis Oil where the inferior interest holder was unaware of the superior interest. Finally, it is true that Champlin's inferior mortgage proved to offer little security, given the value of the property at the time of foreclosure and the existence of USX's first mortgage. Champlin nonetheless held a valid, but inferior, and at the time of sale a nigh valueless, mortgage. Champlin's interest, even though terminable by foreclosure of the superior loan was sufficient to trigger due process.

## B.

In its complaint for declaratory judgment, USX sought a declaration upholding the foreclosure sale and declaring that the Champlin mortgage was extinguished. Alternatively, if the court found that the Champlin mortgage was not extinguished, USX requested a private auction of the property or an order annulling the foreclosure and returning both the USX and Champlin mortgages to their positions before the sale. Champlin contested these remedies arguing that the foreclosure sale extinguished the USX mortgage but not the Champlin mortgage, leaving Champlin as first mortgagee. The district court found that the USX mortgage and the Champlin mortgage survived foreclosure and ordered the property resold at private auction, giving USX the right to bid to the full

9

amount due under its first mortgage.  Champlin urges us to reverse the district court's remedy and make him first mortgagee.

Champlin first argues that the district court's remedy effectively nullifies the foreclosure sale in violation of Louisiana law. La. R.S. 13:4112 provides that a judicial sale of immovable property may not be annulled.  La. Civ. Code Art. 2619 further provides that a sale may only be set aside in the case of fraud.   However, the remedy for the violation of a federal constitutional right is a matter of federal law, and therefore these provisions are not controlling.   In any event, even Champlin's proposed remedy would not leave the foreclosure sale in tact.[5]

We cannot agree that Champlin is entitled to a first mortgage to remedy the lack of notice.  This primitive remedy would put Champlin and the FDIC in a better position than they enjoyed before the sale; it would elevate their subordinated mortgage to a first mortgage.  Cf. Verba v. Ohio Cas. Ins. Co., 851 F.2d 811, 816 (6th Cir. 1988).  In Verba, the IRS foreclosed on an interest in real estate to satisfy a tax lien without giving actual notice to Ohio Casualty, an inferior judicial lienor.  After finding a constitutional violation under Mennonite, the court stated:

> we wish to clearly emphasize our belief that this conclusion does not entitle Ohio Casualty to have its lien elevated in priority over that of the United States.  Although it is for the district court to determine the precise procedures by which Ohio Casualty's rights will be vindicated, the remedy

---

[5]We also note that Louisiana has recently enacted La. R.S. 13:3886.1 which provides for an action for damages as the exclusive remedy for failure to give notice.

10

should provide Ohio Casualty with <u>no interest greater than</u> <u>that which it possessed when the foreclosure proceedings were</u> <u>first instituted</u>.

<u>Id</u>. (emphasis added).

Champlin's authorities do not support the remedy he seeks. In <u>Magee v. Amiss</u>, 502 So. 2d 568 (La. 1987), Dr. and Mrs. Magee had received a judgment of separation and were waiting for a judgment of divorce and a settlement of their community property. Dr. Magee contracted with Reynolds Roofing Company, Inc. for the repair of the community home. After refusing to pay Reynolds Roofing, Dr. Magee allowed the home to be seized and sold at a sheriff's sale. The original Act of Sale to Dr. Magee reflected Mrs. Magee's ownership interest in the property; however, she was not given notice before the sheriff's sale. La. Civ. Code Art. 2347 requires the concurrence of both spouses for the alienation of immovable property. The Louisiana court held that the foreclosure sale did not extinguish her interest, because the sale was without Mrs. Magee's consent and her due process right to notice under <u>Mennonite</u> was violated. Therefore, the subsequent purchasers only owned Dr. Magee's one-half interest. <u>Id</u>. at 572-73. The interest of co-owner, not mortgagee, was at issue in <u>Magee</u>. Moreover, the court's holding did not give Mrs. Magee a greater interest after the sale than she enjoyed before. <u>Magee</u> does not support elevating Champlin to first mortgagee.

In <u>Myers v. United States</u>, 647 F.2d 591 (5th Cir. 1981), we considered the effect of a Louisiana foreclosure sale on an inferior federal tax lien where the Government was not given proper

11

notice of the sale. Because the sale was an "other sale" under 26 U.S.C. § 7425(b), the foreclosing creditor's failure to serve notice upon the United States precluded the discharge of the tax liens. Section 7425(b) provides that a foreclosure sale is made subject to federal tax liens unless the United States is given the proper notice. If seen as an elevation of a tax lien to first position, it is a federally prescribed remedy. Regardless, this federal remedy has no comfort for Champlin. His strange contention for a "leapfrogging" lien is even more problematic given USX's payment to Champlin of $50,000 to subordinate his mortgage and Champlin's failure to require notice from USX in the subordination agreement. These facts are relevant to the crafting of an equitable remedy.

We think the district court's order that the Shopping Center be resold at private auction is an appropriately tailored remedy. It does not completely restore the parties to the status quo, but it does restore the opportunity to bid the property and purchase at the foreclosure sale while avoiding the wastefulness of a second foreclosure proceeding.

Finally, the district court found that Champlin had failed to show any damage from USX's failure to give notice. As we explained, the FDIC appraised the property six months before the sale at $2,250,000. The USX appraisal, at the time of the foreclosure, was $3,500,000. The balance due USX at that time was $4,032,000. From these facts, the court concluded "[i]t is impossible for this court to believe that Champlin, as second

12

mortgage holder, would have bid in excess of $4,032,000 to acquire property valued at between $2,250,000 and $3,500,000." We agree.

AFFIRMED.

GARWOOD, Circuit Judge, concurring:

I join in the affirmance and in all of Judge Higginbotham's cogent opinion except only part III A thereof. While I agree that Champlin's subordinated lien was a sufficient property interest to trigger due process, I have grave reservations about extending *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) so far as to invalidate as to Champlin USX's foreclosure sale under the circumstances here. Perhaps we have already gone this far in *Davis Oil Co. v. Mills*, 873 F.2d 774 (5th Cir. 1989); *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir. 1989); and *Sterling v. Block*, 953 F.2d 198 (5th Cir. 1992), but I would leave that question open until necessary for decision. For the reasons so well explained by Judge Higginbotham, even if there were a *Mennonite* violation neither Champlin nor Gladstone has any valid grounds to complain of the judgment below, and USX may not do so as it has not appealed.